In the Matter of Joyce ELMS, Debtor.

Joyce ELMS, Plaintiff,

v.

UNITED STATES of America and the Internal Revenue Service, Defendants.

Bankruptcy No. 91–13300B.
Adv. No. 91–1301B.

United States Bankruptcy Court, E.D. Louisiana.

March 29, 1993.

Jerry W. Sullivan, Metairie, for debtor Joyce Elms.

Philip Doyle, U.S. Dept. of Justice, Tax Div., Washington, DC, for the U.S.

## MEMORANDUM OPINION

THOMAS M. BRAHNEY, III, Chief Judge.

This matter came before the Court on a Complaint to Determine the Validity, Priority or Extent of Federal Tax Lien filed by the Debtor, Joyce Elms. A trial was held on the Complaint, at which time the Court heard the statements of counsel and the testimony of witnesses. Having considered the statements made, the evidence offered, the memoranda submitted and the applicable law, the Court enters the following Memorandum Opinion.

## BACKGROUND

In August of 1991, the Debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code. Later that same year, the Internal Revenue Service filed a proof of claim for $170,286.99, which purports to represent (1) the Debtor's unpaid personal income tax; (2) withholding taxes due from TAC Amusement Company (TAC), a Louisiana general partnership in which the Debtor was a general partner; and, (3) the Debtor's share of a one hundred percent penalty tax assessed against TAC as a "responsible person" under 26 U.S.C.A. § 6672(a). Only the third group of tax liabilities, the one hundred percent penalty assessment, is at issue in this adversary proceeding. Therefore, the sole issue is whether TAC was a "responsible party" within the meaning of § 6672(a), and whether it willfully failed to collect, account for, or pay over income and payroll taxes withheld from the employees of various corporate entities.

## FACTS

During the years between 1968 and 1984, the Debtor, maintained an interest as a general partner in TAC Amusement Company, a Louisiana general partnership which had arisen between the Debtor, her sister (Regina Elms Keever) and her brother (John Elms, Jr.), upon the death of their father in 1968. The Debtor was a silent partner with no managerial responsibility or involvement. The partnership operations were totally controlled by John Elms, Jr.

The Debtor was also a shareholder in several closely held corporations created by her brother, John Elms, Jr. Three of these corporations are relevant to this proceeding: 1) International Property Management, Inc. (IPM); 2) Operator Sales, Inc. (Operator Sales); and, 3) Rondo, Inc., d/b/a TAC Cigarette (Rondo).

International Property Management was created by the three members of the Elms family as a real estate management corporation. IPM was first operated by John Elms, Jr. then later by Jacques Benchabbat. Its office and accounts were separate and apart from those of the other entities. Operator Sales was organized by John Elms, Sr. to market and sell amusement machines. At all times relevant to this dispute, Operator Sales was controlled by John Elms, Jr. Its office space and operating accounts were maintained separate and apart from those of TAC. Finally, Rondo Inc., which maintained amusement routes throughout the Baton Rouge and Monroe areas, was operated solely by John Elms, Jr. and William Newport.

John Elms, Jr. was the driving force behind the partnership and all three corporations. The Debtor was not involved in the day to day operations or financial affairs of any of these corporations, although upon occasion she did perform certain public relations and interior decorating services. TAC held no ownership interest in any of the corporations. Each of the four entities maintained separate books, bank accounts, and tax identification numbers.

The government's claim that TAC partnership is a "responsible person" with respect to the unpaid withholding taxes of I.P.M., Operator Sales, and Rondo employees is based on the fact that the payroll functions of each of the four entities were handled through TAC partnership. John

Elms, Jr. established this procedure to improve accuracy in the administration of the payroll. Under this system, each corporation would submit its payroll information to TAC personnel, who then entered the information into the TAC computer. The computer would calculate the earnings and withholding tax for each employee, generate the payroll checks (drawn on a TAC account), and print a report detailing, for each employee and for each corporation, the amount of the check and the proper amount of withholding taxes. By way of intercompany transfers, each corporation would then credit a TAC account for the *gross* payroll amount. (see IRS brief, p. 6). The partnership and the three corporations filed only one payroll tax return.

## ISSUE

■ Title 26 U.S.C. §§ 3102(a) and 3402(a) require an employer to withhold from his employees' wages, social security (FICA) and income taxes. These taxes are held in trust for the benefit on the United States. 26 U.S.C. § 7501. Section 6672 of the Tax Code imposes a one hundred percent penalty on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax or truthfully account for and pay over such tax...." Section 6671(b) defines *person* to include "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in respect of which the violation occurs." Case law generally refers to such a person a "responsible person". Thus, in order to establish liability under § 6672, the I.R.S. must show that TAC is a "responsible person" under § 6671(b), and that TAC "wilfully" failed to pay the taxes in question. This Court will address both of these requirements but must first address the question of which party has the burden of persuasion.

## BURDEN OF PROOF

■ In deciding which party must bear the ultimate burden of persuasion, this court is faced with two conflicting rules. In tax litigation the taxpayer generally bears the burden of proving that the assessment is invalid. *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *United States v. Rexach*, 482 F.2d 10 (1st Cir.1973). This rule has been applied to litigation concerning penalty assessments under 26 U.S.C. § 6672. *Calderone v. United States*, 799 F.2d 254 (6th Cir.1986). In bankruptcy cases, however, the opposite rule applies. Under 11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f), a properly filed and executed proof of claim is prima facie evidence of its correctness. Once the objecting party has introduced sufficient evidence to rebut the prima facie validity of the claim, the burden shifts to the claimant to establish the validity of the claim. *In re Century Inns, Inc.*, 59 B.R. 507 (S.D.Miss.1986). These rules collide in the instant case because the I.R.S. has brought a tax claim in the context of a bankruptcy proceeding.

The issue of how to allocate the ultimate burden of persuasion appears to be a novel one in this circuit. Courts in some circuits have placed the burden on the taxpayer-debtor, reasoning that Rule 3001(f) establishes that a proof of claim constitutes evidence, but that it does not—strictly speaking—shift the burden of proof. *See In the Matter of Cobb*, 135 B.R. 640 (Bankr. D.Neb.1992). According to this view, Rule 3001(f) merely creates a presumption that the proof of claim constitutes evidence.[1] Once that presumption is overcome, the proof of claim no longer constitutes evidence and the burden of proof must be allocated by applicable non-bankruptcy law. *cf.* Fed.R.Evid. 301. The court in *Cobb* was concerned that the opposite rule would permit a tax litigant to shift the burden of proof simply by filing bankruptcy.

■ Although the *Cobb* view has much to recommend it, this Court sides

---

1. Bankruptcy Rule 3001(f) reads as follows: (f) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

with the growing majority of courts which refuses to create a special exception to the longstanding rule that in bankruptcy proceedings, the claimant always bears the ultimate burden of persuasion on the validity of its claim. This decision is in accord with *In the Matter of Federated Department Stores*, 135 B.R. 950 (Bankr.S.D.Ohio 1992); *In the Matter of Federated Department Stores*, 135 B.R. 962 (Bankr.S.D.Ohio 1992); *In Re Premo*, 116 B.R. 515 (Bankr. E.D.Mich.1990); and, *In re Derickson*, 104 B.R. 346 (Bankr.D.Or.1989). Thus, the I.R.S. must be treated like any other claimant in a bankruptcy case and must carry the burden of persuasion on each of its claims.

## ANALYSIS

The I.R.S. contends that TAC is a responsible person within the meaning of these statutes, and that the Debtor is liable as a general partner for her virile share of the partnership liability. Louisiana Civil Code article 2817 provides that each partner is bound for his virile share of partnership debts. At all times relevant to this contest, the Debtor maintained a 30.85% interest in the partnership.

■■■ The Debtor argues that the responsible person was John Elms, Jr. rather than the partnership as a whole. As the testimony makes clear, John Elms was responsible for the day to day operations and financial affairs of the partnership and the three corporations. However, even if John Elms were found to be a responsible person under § 6671 (an issue not before this Court), that finding without more would not release the partnership from liability. More than one person may be found to be a responsible person for a particular tax period, *United States v. Graham*, 309 F.2d 210, 212 (9th Cir.1962), and liability under the section may be imposed on both. *Turner v. United States*, 423 F.2d 448, 449 (9th Cir.1970). Furthermore, a partnership may be a responsible person under §§ 6671 and 6672. *Lesher v. United States*, 440 F.Supp. 372 (N.D.Ind.1977).

Thus, the question is not whether John Elms is a responsible person, but rather which "hat" he was wearing when he engaged in the activities described above. If he was acting on behalf of T.A.C. partnership, then the Debtor would be liable for her virile share as a general partner. La. C.C. art. 2817. If, however, he was acting as an officer of the various corporate entities, then the partnership would not be liable. *See In re Derickson*, 104 B.R. 346 (Bankr.D.Or.1989).

■■ The I.R.S. has shown that TAC personnel were significantly involved in the administration of the payrolls of the various corporations. TAC personnel compiled wage information, generated reports and cut the paychecks for the corporate employees. These duties, however, are largely mechanical, and such mechanical duties are not determinative of liability under § 6672. *See Godfrey v. United States*, 748 F.2d 1568, 1575 (Fed.Cir.1984). Instead, the courts should look through the mechanical functions and determine which person (in this case, which entity) has the ultimate authority for the decision not to pay taxes. *White v. United States*, 372 F.2d 513, 516, 178 Ct.Cl. 765 (1967).

At the hearing, the Debtor presented uncontroverted evidence that John Elms was vested with ultimate authority to pay withholding taxes, and that he was the driving force behind TAC and the three corporate entities. Payroll checks for all three corporations were drawn on a partnership account and that each corporations reimbursed the partnership for the *gross* amount of the pay, including amounts supposedly withheld for taxes.

For the reasons stated above, this Court concludes that John Elms was acting on behalf of TAC when he failed to pay over the withholding taxes. TAC is therefore a responsible person under § 6672. The remaining question is whether the failure to pay over the taxes was "willful".

■■ Non-payment of taxes is willful within the meaning of the statute if it is "voluntary, knowing and intentional, although it is not done with bad purpose or evil motive...." *Calderone v. United States*, 799 F.2d at 254, 259 (6th Cir.1986)

**524**

(citation omitted). "Mere negligence in failing to ascertain facts regarding a tax delinquency is insufficient to constitute willfulness under the Code." *Bauer v. United States*, 211 Ct.Cl. 276, 543 F.2d 142, 149 (1976).

■■■ As already stated above, John Elms was the driving force behind TAC partnership and each of the three corporations. He was intimately involved in the day to day operations of TAC, including the payroll tax procedures. Given the extent of his involvement, this Court holds that John Elms, acting on behalf of TAC, willfully failed to pay over the taxes in question. Consequently, TAC partnership is liable for the § 6672 penalty tax, and that the Debtor for is liable for her virile share of that amount.

■■■ The only remaining issue concerns the admissibility of evidence produced by the I.R.S. on the morning of trial. In its response to interrogatories and in its proofs of claim filed November 27, 1991 and September 9, 1992, the I.R.S. indicated that it based its penalty tax claims on TAC's failure to pay over taxes allegedly owed by (1) I.P.M. for the second quarter of 1983 and the third quarter of 1984; (2) Rondo Inc. for tax periods in 1985; and, (3) Operator Sales for the first quarter of 1981, the second and third quarters of 1983, and the third quarter of 1984. Yet, on the morning of the trial, the I.R.S. announced that the above mentioned dates were substantially incorrect, and that it intended to base its claims on TAC's failure to pay over taxes allegedly owed by (1) I.P.M. for the first quarter of 1981 through the third quarter of 1984; (2) Rondo Inc. for the third quarter of 1983 through the third quarter of 1984 and (3) Operator Sales for the first quarter of 1981 through the third quarter of 1984.

To allow the I.R.S. to attempt to prove liability based on this newly revealed information would be grossly unfair to the Debtor. This case began several years ago and has involved extensive discovery. The I.R.S. has amended its proof of claim twice. In preparing for trial, the Debtor was entitled to rely on information supplied by the I.R.S. concerning the tax periods in question. Not until the morning of trial did the I.R.S. inform the Debtor or this Court of the actual periods upon which it based its claims. For the foregoing reasons, this Court rules that evidence of tax liability for periods not revealed during discovery is inadmissible in this proceeding.

## CONCLUSION

For the foregoing reasons, this Court concludes that TAC partnership is a "responsible person" under 26 U.S.C. § 6672, and that it wilfully failed to pay over the withholding taxes in question. In light of facts particular to this case, evidence produced on the morning of trial concerning tax periods not disclosed during discovery is inadmissible. Consequently, the Debtor is liable for 30.85% of the tax liability assessed against TAC for its failure to pay over any taxes owed by I.P.M. for the second quarter of 1983 and the third quarter of 1984 and for its failure to pay over any taxes owed by Operator Sales for the first quarter of 1981, the second and third quarters of 1983, and the third quarter of 1984. Because Rondo Inc. ceased to exist after September 11, 1984, the contention that TAC is liable for failing to pay over taxes allegedly owed by Rondo Inc. for 1985 is without merit. The Complaint also seeks to have this Court determine the extent of the liens. However, the documentation offered by the I.R.S. regarding the amounts of the taxes owed is confusing and conflicting and the Court cannot, therefore, make any specific determinations on this issue. Consequently, the Court will require the parties to confer and reach an agreement on the exact amounts of taxes owed, using the guidance of this Opinion regarding the tax periods to be covered. An appropriate Judgment will be entered.

## JUDGMENT

For the reasons assigned in the foregoing Memorandum Opinion entered herein by the Court this date,

**IT IS ORDERED, ADJUDGED AND DECREED** that, on the Complaint to Determine Validity, Priority and Extent of

Federal Tax Liens filed by the Debtor, Joyce Elms, judgment be rendered, in large part, **IN FAVOR OF THE INTERNAL REVENUE SERVICE.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Debtor is **LIABLE FOR 30.85%** of the federal tax liability assessed against TAC Amusement Company for failure to pay taxes owed by **INTERNATIONAL PROPERTY MANAGEMENT, INC. FOR THE SECOND QUARTER OF 1983 AND THE THIRD QUARTER OF 1984;** for failure to pay taxes owed by **OPERATOR SALES, INC. FOR THE FIRST QUARTER OF 1981, THE SECOND AND THIRD QUARTERS OF 1983 AND THE THIRD QUARTER OF 1984.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Debtor is **NOT LIABLE** for any federal taxes allegedly owed by **RONDO, INC.**

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the parties come to an **AGREEMENT** within thirty (30) days of the entry of this Judgment, concerning the **AMOUNTS OF THE TAXES OWED** and present this agreement to the Court for approval.